<u>**FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ONTEL PRODUCTS CORP.,**<br><br>*Plaintiff,*<br>v.<br><br>**MINDSCOPE PRODUCTS,**<br><br>*Defendant.* | Civil Action No. 16-1540<br><br>**OPINION** |

      **THIS MATTER** comes before the Court by way of Defendant Mindscope Products ("Mindscope") motion to dismiss Plaintiff Ontel Products Corp.'s ("Ontel") Complaint. Dkt. No. 10. In this trademark infringement action, Ontel alleges that Mindscope's trademark registrations for different colored toy car tracks are invalid and seeks a declaratory judgment of non-infringement. Mindscope moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Because Mindscope's enforcement-related activities in New Jersey consist only of sending a cease and desist letter to Ontel and engaging in a follow-up phone call, Mindscope is not subject to personal jurisdiction in New Jersey. The motion to dismiss is **GRANTED**.

    **I.**    **BACKGROUND**

      Ontel is a New Jersey corporation with a principal place of business in the state. Compl. ¶ 5, Dkt. No. 1. Mindscope is a California corporation with a principal place of business there. <u>Id.</u> ¶ 6.

      Ontel manufactures a toy vehicle and track set under the mark MAGIC TRACKS. <u>Id.</u> ¶ 7. The individual pieces of the toy track are attachable and detachable to allow the user to customize the shape of the completed toy track. Mindscope also manufactures and sells toy vehicles and tracks under the name TWISTER TRACKS. <u>Id.</u> ¶ 8. The individual pieces are similarly attachable

and detachable to allow the user to customize the shape of the completed toy track. Id. The parties' products both consist of individual toy track pieces that are functionally shaped to allow assembly of the individual toy track pieces into a completed track that can twist and bend while the individual pieces are connected. Id. ¶ 9. Both products also contain individual track pieces in several primary and secondary colors. Id. ¶ 10.

In February 2016, the U.S. Patent and Trademark Office granted Mindscope the following five trademark registrations: U.S. Trademark Reg. Nos. 4,900,468 (yellow); 4,900,469 (red); 4,900,465 (green); 4,900,464 (blue); and 4,900,462 (purple) (collectively, "Mindscope's Registrations"). Id. ¶ 11. Mindscope's Registrations list the colors as features of the mark. Id. ¶ 12.

Mindscope's Registrations claim a date of first use in November 2010, but Ontel alleges that, prior to that date, other companies have sold toy vehicles and track products in a multitude of similar colors. Id. ¶ 13.

On March 8, 2016, Mindscope sent a cease and desist letter to Ontel. Id. ¶ 14. Mindscope asserted that Ontel's product infringed Mindscope's trade dress rights and that it "is prepared to resort to any and all legal means necessary to enforce [its] rights, including filing a suit for a permanent injunction, damages, and legal fees." Id. Mindscope requested Ontel's response to the letter by March 18, 2016. Compl. Ex. E, Dkt. No. 1-5.

On March 18th, Ontel instead filed the instant four-count Complaint under the United States Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act") and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. In Counts One, Two, and Three, Ontel requests a declaration of judgment of invalidity for Mindscope's Registrations on the basis of voidness ab initio, functionality, and lack of acquired distinctiveness. In Count Four, Ontel requests a

declaratory judgment that its product does not infringe Mindscope's trade dress or trademark rights.

The parties engaged in limited communications after the Complaint was filed. On March 19th, Ontel e-mailed Mindscope to advise it of the declaratory judgment action, Arvizu Decl. ¶ 4, Dkt. No. 10-2; and on March 23rd, the parties had a follow up phone call, id. ¶ 5; Drangel Decl. ¶ 11, Dkt. No. 13-1.

On March 25, 2016, Mindscope filed an infringement and unfair competition action against Ontel in the District Court for the Central District of California. Mindscope then filed this motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer this action to California. In its moving papers, Mindscope has provided a declaration that its direct sales to New Jersey customers amount to approximately 0.18% of its total sales, and it does not have any other business operations or property in the state. See Balanchi Decl. ¶ 5, Dkt. No. 10-3. Ontel has provided evidence that Mindscope sells its products through its interactive website, as well as through online and brick and mortar retailers; it has sold a large quantity of its products through those retailers; and it uses a large network of sales representatives. Drangel Decl. ¶¶ 4-5, 7.

## II. RULE 12(B)(2) MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (internal citation omitted). The plaintiff may rely on the complaint, affidavits, or other competent evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). Where the court chooses not to conduct an evidentiary hearing, the plaintiff need only demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss. Carteret Sav.

Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Id.

**III.   ANALYSIS**

In a federal question case, the Court must determine whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant.  Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 295 (3d Cir. 1985).  Since there is no federal statute authorizing nationwide personal jurisdiction in this case, New Jersey's long-arm statute applies.  See Fed. R. Civ. P. 4(k)(1)(A).

"New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)).  Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction: specific and general.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). Specific jurisdiction arises from the acts that give rise to the particular claim asserted; general jurisdiction exposes the defendant to jurisdiction for any and all claims.

**A. General Jurisdiction**

Mindscope first argues that the Court does not have general jurisdiction over it.  Ontel does not directly address the issue.  The Court agrees with Mindscope.

General jurisdiction is satisfied when the defendant's affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal citation and quotation marks omitted). For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business. Daimler AG v. Bauman, 134 S.Ct. 746, 760 (2014) (internal citations omitted). Aside from these exemplar bases, general jurisdiction may arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19.

Here, the Court does not have general jurisdiction over Mindscope. Mindscope was not incorporated in New Jersey and its principal place of business is not in this state. Nor has Ontel provided evidence that Mindscope's business activities in this state give rise to general jurisdiction. Ontel does not challenge Mindscope's assertion that it receives less than 1% of its revenue from direct business conducted in New Jersey. See Display Works, LLC v. Bartley, No. 16-583, 2016 WL 1644451, at *4 (D.N.J. Apr. 25, 2016) (finding no general jurisdiction where defendant received less than 1% of revenue from business in New Jersey).

Ontel asserts that Mindscope probably conducts indirect business in this state through online third party retailers. Ontel cannot meet its burden with that alone. See Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (requiring plaintiff to establish sufficient contract between the defendant and the forum "with reasonable particularity"). Ontel does not provide any evidence that reasonably suggests that indirect sales in New Jersey occur at all or that those sales surpass Midscope's third party sales made elsewhere. See Daimler, 134 S.Ct. at 762 n.20 ("[T]he general jurisdiction inquiry does not focus solely on the magnitude of the

defendant's in-state contacts. General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.") (internal quotations and brackets omitted). The Court does not have general jurisdiction over Mindscope.

### B. Specific Jurisdiction

Mindscope next argues that specific jurisdiction is lacking in this case. It asserts that its enforcement activity in New Jersey is limited to sending the single cease and desist letter, and that is not enough contact to subject it to jurisdiction. Ontel responds that the Court should look to all of Mindscope's mark-related business activity in the state, not just its enforcement activity. Under that theory, Ontel argues that specific jurisdiction exists based on the cease and desist letter coupled with the sales of its product in New Jersey. The Court again agrees with Mindscope.

Specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims. See Helicopteros, 466 U.S. at 413-14. Establishing specific jurisdiction requires a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor, 496 F.3d at 317.

Under the first factor, Ontel alleges that Mindscope conducted the following activities in the forum: (1) it sent the cease and desist letter to New Jersey; (2) it conducts 0.18% of its total direct sales in New Jersey; (3) it maintains a website where New Jersey consumers could buy the product; and (4) many third party retailers sell its products. Drangel. Decl. ¶¶ 4-7. The Court assumes that these contacts are purposefully directed at the forum.

Under the second factor, the Court must determine whether the litigation arises out of or relates to at least one of these contacts. Mindscope admits that the cease and desist letter is a

relevant contact to this litigation. It disputes that the remaining activities should be considered because Ontel's declaratory judgment claim has nothing to do with Mindscope's business activity.

As such, the Court must decide whether Ontel's declaratory judgment action relates to Mindscope's attempt to protect its marks in this state, or from Mindscope's product-related business in this state. Neither the Third Circuit nor courts in New Jersey have directly addressed the issue, but the Federal Circuit's reasoning in Avocent Huntsville Corp. v. Aten International Co., 552 F.3d 1324 (Fed. Cir. 2008) is instructive. In Avocent, the court held that the relevant contacts in a similar declaratory judgment case based on a patent are the defendant's enforcement activity, not its business activity:

> [T]he nature of the claim in a declaratory judgment action is to clear the air of infringement charges. Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities.

Avocent, 552 F.3d at 1332 (internal quotations and citations omitted); see also New Belgium Brewing Co., Inc. v. Travis Cty. Brewing Co., LLC, No. 15-272, 2015 WL 2106329, at *8 (D. Colo. May 1, 2015) (explaining Avocent and applying it to declaratory judgment action involving trademarks).

The Court finds this reasoning persuasive. The relevant contacts in a declaratory judgment action like this one—where the plaintiff seeks a defensive declaration of invalidity, non-infringement, etc.—are not just any in-state use of the marks at issue. The plaintiff's claims do not arise from those contacts, as they would in an infringement lawsuit. Rather, they relate to the defendant's attempt to stop the plaintiff from selling its goods. See Red Wing Shoe Co. v.

7

Hockerson–Halberstadt, Inc., 148 F.3d 1355, 1360 (Fed. Cir. 1998). The plaintiff is aggrieved because the defendant's actions are allegedly wrongful, and the plaintiff asserts that it should be allowed to continue selling its products. The relevant contacts in such circumstances relate to the defendant's attempts to stop plaintiff from selling its goods. In other words, the relevant contacts relate to the defendant's enforcement activities, not to where the defendant commercialized its products.

The distinction is apparent when applied to the instant matter. Here, Ontel's claim arises from the fact that Mindscope sent a letter accusing it of infringing its marks. Ontel seeks to be able to sell its products without fear of an infringement suit. On the other hand, Ontel's claim does not depend on the fact that Mindscope sells some of its products that contain the registered trade dress or marks in New Jersey. Indeed, if Mindscope did not sell a single product in New Jersey, Ontel's basis for the declaratory judgment would not change. Since Mindscope's commercialization activities have no impact on Ontel's claim, the claim cannot be related to or arise out of those activities.

Ontel agrees that Avocent accurately reflects the law in patent cases, but asserts two reasons why the rule does not apply in the trademark context. Neither reason is persuasive.

First, Ontel argues that Avocent's reasoning should not apply because it is a patent case involving the Federal Circuit's personal jurisdiction rules, whereas trademark actions involve the forum state's laws. This is a distinction without a difference. New Jersey and the Federal Circuit apply the same three-part inquiry to ensure that the due process requirements of the United States Constitution are satisfied. Compare Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006) with Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (applying New Jersey's personal jurisdiction rules). The inquiry does not change from one

jurisdiction to the other.  Moreover, the reasoning in Avocent may have developed in patent case law, but it is not confined to that context.  It stems from the jurisdictional rule that the contacts that support specific jurisdiction can change depending on the transaction giving rise to the lawsuit.  See Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 588 (3d Cir. 1982) ("The focus must be on the relationship of the transaction giving rise to the law suit to the forum where the plaintiff seeks to litigate it."); Asanov v. Gholson, Hicks & Nichols, P.A., 209 Fed. App'x 139, 141-42 (3d Cir. 2006) (per curiam) (holding that, even though defendants' contacts were of the type that can sometimes support specific jurisdiction, they could not do so in that case because the law suit arose from other actions).  The rule therefore is not limited to patent cases, and applies equally to this trademark action.

Second, Ontel cites to several out-of-circuit district court cases involving trademark declaratory judgments that considered business activities in their personal jurisdiction analyses.  See Foreign Candy Co. v. Promotion In Motion, Inc., 953 F. Supp. 2d 934, 940 (N.D. Iowa 2013); ICG Am., Inc. v. Wine of the Month Club, Inc., No. 09-133, 2009 WL 2843261, at *7 (D. Conn. Aug. 28, 2009); Kmart Corp. v. Key Indus., Inc., 877 F. Supp. 1048, 1052 (E.D. Mich. 1994).  But none of the parties in those cases raised the instant issue.  Given that those decisions are all silent on this point, they are not particularly instructive.

In sum, the Court holds that the relevant specific personal jurisdiction inquiry in an action for declaratory judgment of non-infringement, invalidity, or unenforceability is the defendant's enforcement activities that are purposefully directed at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities.

Here, Ontel's case arises out or relates to Mindscope's enforcement activities, so the Court will only consider contacts relevant to those activities.  The only relevant contact is its cease and

desist letter. However, a cease and desist letter alone does not rise to the level of purposeful availment for the purposes of jurisdiction in New Jersey. Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 301 (3d Cir. 2008); see also Red Wing, 148 F.3d at 1361 (holding that a "patentee [does] not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement," as "[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness."); Database Am., Inc. v. Bellsouth Advert. & Pub. Corp., 825 F. Supp. 1195, 1213 (D.N.J. 1993) ("Courts have consistently held that the sending of a cease and desist letter in patent or copyright cases is alone insufficient to establish the minimum contacts necessary for specific personal jurisdiction.") (internal citations omitted). The letter does not threaten suit in New Jersey or reference the laws or protections of the state, and Ontel has not provided any evidence that Mindscope has engaged in any in-state enforcement activity related to other alleged infringers.[1] The only other possible enforcement-related contacts are the follow-up communications between the parties' attorneys via e-mail (sent by Ontel's counsel) and a phone call to discuss settlement. These two communications, which occurred after Ontel filed this action, do not establish specific jurisdiction over Mindscope.

The Court accordingly cannot exercise personal jurisdiction over Mindscope in this matter.

IV. **CONCLUSION**

For the reasons set forth herein, the motion to dismiss is **GRANTED** and the case is dismissed. An appropriate Order accompanies this Opinion.

---

[1] Ontel submitted two other cease and desist letters sent by Mindscope to other companies, but both letters were sent to the California addresses of companies headquartered in New York. See Second Drangel Decl. ¶ 4, Dkt. No. 15-2; Drangel Decl. Ex. 4, Letter to NBC Universal; Second Drangel Decl. Ex B, Letter to Viacom, Dkt. No. 15-4. Because Ontel has already investigated Mindscope's enforcement activities, and since it has not provided any reason to believe any other activities occurred in New Jersey, the Court declines its request (which was raised for the first time in its sur reply) to engage in jurisdictional discovery.

**Dated: December 8, 2016**

                                                   */s Madeline Cox Arleo*
                                                   **Hon. Madeline Cox Arleo**
                                                   **UNITED STATES DISTRICT JUDGE**